Text Pharma, 18-2088. Good morning, Your Honors, and may it please the Court. Kevin Curlie of the firm Garson-Segal-Steinmetz-Flatgate on behalf of Plaintiff Appellant LG Capital Funding. The District Court erred on two grounds, which both stem from an improper reliance by the Court on statements made off the record by Defendant's Counsel. It would have been negligent for me as Counsel to have relied on those statements. Why didn't you do something after the conference to get that locked in, that they were admitting the debt? There was so much you could have done. You could have served a request for admission. You could have moved for partial summary judgment. You could have made a Rule 68 offer. But you let those issues carry on, notwithstanding what I don't think there's any dispute about happened at the initial status conference. I understand, Your Honor, but I do think that as Defense Counsel, a lot of those actions would be Defense Counsel's burden. Defense Counsel is the one who would normally present an offer of judgment under Rule 68 to shift the fee provision that we all acknowledged existed. But a partial summary judgment motion, 54B, would have gotten you an immediately executable judgment. I did seek to move for summary judgment rather than go to a bench trial. But Judge Cote found that because it was a bench trial and we would be submitting our pretrial memoranda, that she does not allow summary judgments. Summary judgment motions, I think Defense Counsel will agree to that. What about a simple letter? Why not just say, this is what I heard at the conference. This is what I think the position is that they're taking, but they haven't amended their answer. It could be as formal as a request for admissions or as informal as just asking the judge to state on the record what happened at the conference or asking your adversary to say what happened. It just strikes me as peculiar that one would go all the way to the moment of trial not knowing whether you were trying these issues or not when it could easily be resolved. Understood, Your Honor, and in retrospect, I would have done so. However, I will reiterate I do think that it would be defendant's burden when they would be on the hook for these attorney's fees to make those steps to streamline the litigation. If they were later going to argue, no, you didn't really prevail on that issue because we said from the outset. That's a satellite issue. The critical issue here is, have you already won half of your case or not? That's the salient issue, not attorney's fees. The salient issue is, oh, have they acknowledged so that we don't have to prepare, spend our client's money preparing to take on affirmative defenses or whatever else is in the answer? Or have we already won half the case? And that seems to me, it just seems to me a little difficult to believe that you were actually somehow misled and were anticipating all the way through that, huh, they said that. But I guess we still have to try the issue of do they owe on this note in the first place. Yes, Your Honor. Well, to clarify that, in order to even address the delivery of shares claims, we still would have to establish the contract and its terms. And while in the stipulated. Even that, if they've acknowledged it, what the contract is, that would be helpful to you. It would simplify the trial. It would. And just to note, this was a bench trial on submission. So I will reference on, I believe it's A261 of our appendix. Most of the fees incurred between that initial conference and the end and the judgment would have likely occurred regardless of whether defense counsel had written a letter, whether I had written a letter, because a lot of the same proofs were required. There was no testimony. Everything was submitted through a short memorandum and a reply and the statement of facts in the trial and the proposed statement of facts. Well, that's an interesting argument, but a different argument. Was that argument made to Judge Coate that she picked the wrong date because really all the fees that were incurred in preparing for trial were – Well, but that's the point, isn't it? That's her point, that all those fees that were incurred in the time from the end of that first conference to the trial were all about the case that you had to try, which you lost. Not the case that was conceded in the initial conference. That's a fair point, Your Honor. But I would argue that even the conclusory statement that we did not prevail in the litigation as a whole was a misapplication. No one said you prevailed in litigation as a whole. You got attorney's fees for the part that you did prevail on. What the court says is, but after that conference, what was going on was something different now. It was not the claim that you won on. It was the claim that you lost on, and that's what all the fees were about. We're preparing for a trial about something that it turns out that the other side won. Rightly or wrongly, but we have to assume rightly because that's not what you're appealing. Well, under New York law, there does need to be some sort of analysis as to which aspects the prevailing party or would-be prevailing party did prevail on. And those three factors are whether the appellant won substantial relief. Now, Judge Cote found that no, appellant did not win the relief related to the conversion, but a $160,000 judgment was granted to plaintiff. As compared to a $500,000-something judgment, you would have won on the conversion claim, right? Yes, Your Honor. So isn't it a central issue inquiry that the district court has to undertake? What's the real driver of the action? Well, I think the real driver of the action, Your Honor, would be the threshold question of whether these are valid contracts, which involved all of the affirmative defenses that could, even if defendant were to say and to prove at trial or to admit on the record there was a valid contract plaintiff performed, defendant didn't perform, some of those affirmative defenses that still existed on the record up to the point of trial could have voided those contracts ab initio, for example, the usury defense or the penalty provision defenses. So I think in terms of the New York court analysis of whether a party is a prevailing party as a whole, the first factor is substantial relief. Your Honor pointed out we didn't get most of what we wanted, but that's only a part of the question. We did win relief under each of the three contracts at issue, and that was relief in terms of the repayment of the principal and interest. Another factor that the court should have analyzed but did not is whether the claims were related to a common core of facts or based on related legal theories. Beyond the underlying contract, what was common? Beyond the underlying contract, the damages were undoubtedly interrelated. If the date of default was related to the failed conversion, the default interest in the repayment amounts would go up and the principal to be repaid would go down. The inverse is true of that as well. As I had mentioned, the affirmative defenses would be interrelated. And then the third factor, which we just touched on, would be whether counsel's time as a whole was devoted to the litigation itself rather than these separate and distinct claims. And as I had mentioned to Your Honors, I think that they would be. But really, I think the more important issue is Judge Coates' reliance on that statement. And there are two ideas, whether she could rely on them, and I think as a district court judge is perfectly entitled to rely on statements made off the record. But if, for example, Judge Coates were to rely on this statement to come to her conclusion that the contracts were undisputed in her memoranda on the issue itself, the issue of liability itself, I think she would be entitled to do so. But whether she would do so was the question for myself, and I think I was duty-bound to pursue those claims up to the point where it was stated on the record by Mr. McKenna  And that point was on the eve of trial, and we had already prepared our trial memoranda. And that was the final date of the fees other than the motion for the fees that we requested. So if there are no other questions from Your Honors, I would respectfully reserve my time. Thank you. Mr. McKenna? Good morning, Your Honors. Brian McKenna. May it please the Court. Counsel and I throughout this have not been disingenuous with each other, and I think he would agree with that. So I'll start out by saying I simply did not think of a Rule 68 offer. I should have offered judgment, and I did not. Well, if you're going to be that straightforward and candid, weren't you also holding the $162,000 undisputed amount over their heads as leverage? It's like you're not going to just give them money for free. You want them to give up or compromise the conversion claim as well. Wasn't that the dynamic of the negotiations? I guess that's the way of looking at it. I actually didn't consider it that way. We went into the conference and pretty much throughout the litigation saying the loans were made, my client got the money, my client owes the money. Whether interest accrued and things like that need to be computed, that was never in dispute. My client's not paying the money. Right, my client hasn't paid the money. You're right. Thank you, Your Honor. And that was said. And I want to, and I did not research this so I can't speak that eloquently about it, but what's off the record when you're in open court before a judge and you say we admit this debt? Let me ask you about that. Let's suppose that the plaintiff had put in a motion for summary judgment just on the debt, not on the conversion issue, and the only evidence put in on that motion for summary judgment was that counsel stated at a conference that these were not in dispute. Is that sufficient for summary judgment? There's no record. There's no admission. One of my notes here is the alternate universe argument. And I think. Not the multiverse. If Judge Cote had said, Mr. McKenna, are you willing to stipulate to that? I would have said yes because I had permission from my client to do so. My clients never conceded that debt. That didn't come up. We'll never know what happens in Pottersville. But nonetheless, you know, we were always willing to admit that debt. And we did so on the record as the stipulated facts at trial also. That was never a contention. The only contention in this issue was whether or not they properly converted and we owed money for that. What's going on between, what is it, July when the conference takes place and February when the pretrial order is agreed to? Is everybody just working on other cases or are there settlement negotiations, without asking you what they were, but were there settlement negotiations or is there just radio silence between the parties? Well, there was a mediation, wasn't there? There was a mediation, yes, sir. And I believe, I don't know where settlement talks and mediation come up or not, but the issue of the debt has never been contended or denied by my client. The issue of the raw debt has never been denied by my client. And that may be, but what we're talking about is the immediate payment of the debt, not just the acknowledgment that, you know, someday you're going to get a judgment for this amount, but until you dispose of your conversion claim, that day may never come. Well, this is just another company that's waiting for its ship to come in, so to speak. It has stock and had offered stock and other manners of settlement. The numbers were never reached. The manner in which stock could be sold was never reached. There were a lot of issues with regard to that. But with regard to my client saying we acknowledge we owe this debt and we have some manner in which we can offer payment, absolutely true. The main problem was not we owe this, but we're kind of hanging on and we have a hundred and whatever thousand dollars in our checkbook, ready to decide on our books to pay this debt, but we're not going to pay it. The problem was they acknowledged they owed the debt, but they had enough liquidity problems and other problems at the startup that even if a judgment had come, it would not necessarily be clear that the plaintiff would get their money the next day. Right. The issue became this is out of the ordinary to discuss settlement like this. And, again, we've been very frank with each other, and I don't want to at all miss and I'll give him the opportunity to contradict me if that's the case. Well, he didn't have rebuttals, so. I'm sorry, sir? He didn't have rebuttals, so. Oh, okay. Well, I'll try to be as clear as I can. We had discussions. My client offered stock, issues regarding how quickly the stock could be sold and the value of it came up and maybe higher numbers that the plaintiff wanted to make up for the fact that it had to risk the stock prices and everything else. The bottom line is it was not that you had the money just. No, there's no cash. And we're refusing to pay it until some other concessions are made on the conversion issue or some other thing is going to happen. I'm not asking about the settlement negotiations, but about the economic situation was such that this was not really in the cards, an immediate payment. That's fair to say, Your Honor. That's very fair to say. It's not in the record, but have you paid the undisputed amount yet? No, they have not. We had a post-appeal filing of the appeal settlement discussions, and once again the issues came up relating to stock and everything else and the fact that this issue just sits in dispute. One issue, if the Court has no questions about that anymore, I just want to say, to me, public policy and judicial economy also argue in favor of affirming the district court's opinion. Essentially, at some point, any plaintiff, if the court were to reverse this ruling, could go back to its client and say, hey, don't worry. We can go on forever, and all our attorney's fees are going to be paid. We already won the case. It doesn't matter what we lose anymore. We've gotten admission enough that we're going to have attorney's fees through trial. Are these two claims related in the way that New York law seems to require? They're not related because one of the things that they said in their paper, I'm looking for the exact word, they constantly use contention, the contended facts. They weren't related because there was no contention. The Court simply, with no disrespect to the Court, rubber-stamped what I admitted on behalf of my client at the pretrial, what was stipulated in the undisputed facts, and every contended, every issue that was in contention was found in my client's favor. That's why there's none. We admitted the contracts. We admitted the debts. We admitted they weren't paid. And I think I'll allow you to get back on track. Thank you, Your Honor. Thank you. We'll reserve the decision.